IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BARBARA MURRAY o/b/o C.S.M., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | CIVIL ACTION NO. 2:07cv654-SRW |
| ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Barbara Murray o/b/o C.S.M.[1] brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed.

**BACKGROUND**

Plaintiff was born on April 7, 1991. (R. 36). On August 6, 2004, when plaintiff was thirteen years old, her mother filed an application for Supplemental Security Income (SSI) on plaintiff's behalf, alleging disability since March 1, 2004 on the basis of attention deficit hyperactivity disorder (ADHD). (R. 36-42, 52). In the disability report, plaintiff's mother states:

---

[1] C.S.M. will be referred to as the "plaintiff" in this memorandum opinion.

> [Plaintiff] stays angry a lot, she says she wish she was dead, she beats up on her sisters and brothers, she plays with knives all the time which she had been doing she was 5 or 6 years old, she fights a lot in school, she threatens other children, she has taken a knife to school, she talks back to the teacher[]s. She is constan[tl]y moving and tries to cut herself.

(R. 44).

Plaintiff sought treatment at Montgomery Area Mental Health Authority (MAHMA) on April 1, 2004. Her mother reported that she was seeking counseling because of an increase in disruptive behavior. She also reported that plaintiff had been "saying strange things" like "I wish I was dead" and "I want to kill myself" off and on over the previous year. Plaintiff was diagnosed with "Disruptive Behavior Disorder NOS," and her counselor developed a treatment plan which included individual and family therapy. Plaintiff thereafter attended therapy sessions on June 2, June 16 and June 30, 2004.

On July 30, 2004, plaintiff was evaluated by Dr. George DeMuth of Behavioral Medicine. Plaintiff's mother reported that plaintiff had recently been arrested for disturbing the peace and being disrespectful to a police officer, and that she had an upcoming court date. She also reported that plaintiff had a prior incident in which she took a knife to school and threatened to kill someone. Plaintiff reported that she "gets mad all the time," and "hears voices in her head telling her to kill herself or to hurt other people." She described an incident in which she "grabbed a knife and was going to hurt herself." She told Dr. DeMuth that she gets in trouble for fighting with her peers, excessive talking and disruption of other students. Dr. DeMuth's initial diagnoses were: (1) Psychotic Disorder, NOS; (2) Rule Out Attention Deficit Hyperactivity Disorder; (3) Mood Disorder, NOS; and (4) Conduct

2

Disorder. Dr. DeMuth prescribed Risperdal, referred plaintiff for psychotherapy, and ordered psychological testing. (R. 92-94). East Alabama Behavioral Medicine administered WISC and MMPI testing, but questioned the results of the testing in view of plaintiff's lack of motivation and effort during testing. (R. 73, 126). Plaintiff received medication and psychotherapy from East Alabama Behavioral Medicine between July 2004 and September 2006. (Exhibits 6F and 7F).[2]

On November 19, 2004, Guy Renfro, Ph.D., performed a consultative psychological evaluation of the plaintiff. Dr. Renfro observed that plaintiff appeared to be functioning in the upper end of the borderline range of intelligence, that she has a "longstanding history of aggressive behavior and argumentative behavior," that she is "quick to take offense with others, and that she "appears to engage in behaviors designed to annoy others." He diagnosed Oppositional Defiant Disorder, Estimated Borderline Intellectual Functioning, and Strabismus.[3] He recommended that plaintiff continue to receive treatment through Behavioral Medicine. (R. 110-12).

On December 3, 2004, Dr. Pilar Vargas, a non-examining psychiatrist, reviewed plaintiff's medical and school records. She determined that plaintiff has less than marked limitations in the domains of "acquiring and using information," "attending and completing

---

[2] Plaintiff attended therapy an average of once per month between September 2004 and June 2005. She did not seek therapy for a five-month period until November 2005; she then attended nine counseling appointments between November 2005 and September 2006.

[3] Strabismus is a condition in which the visual axes of the eyes are misaligned. Stedman's Medical Dictionary (26th ed.), p. 1682.

tasks," and "interacting and relating with others," and no limitations in the remaining three domains. (Exhibit 5F, R. 113-20).

On October 26, 2006, after the claim was denied at the initial administrative level, an ALJ conducted an administrative hearing. Plaintiff's mother testified as follows: Plaintiff attends Goodwin Junior High. She repeated the second grade. She has not been admitted to the hospital at any time in the last two years, and has not sought treatment at an emergency room. She takes Risperdal and Depakote prescribed by Dr. DeMuth. Plaintiff has a "D" in Pre-Algebra. Her other grades are an A, two Bs and three Cs. Her vision is "okay" and she has reduced hearing in her left ear. She has scoliosis, but runs and walks "good." No one has recommended a back brace for the scoliosis. She likes to play games on the computer. Plaintiff has two brothers, aged 13 and 2, and a seven-year-old sister. When her siblings make her angry, she hits them, screams, at them, throws things at them and puts them out of her room. Plaintiff has been involved with juvenile court because of taking a knife to school in sixth grade, and fighting in eighth grade. She went to court for the latter incident the day before the administrative hearing and received six months probation. Plaintiff talks back to her mother and never completes her chores. Plaintiff ran away once after her mother "whooped" her, so plaintiff's mother does not hit plaintiff. She cannot be still and is always biting on her hands or "messing with" or "cutting on" something. Her teachers have not complained about her being very active, but she is hyperactive and easily distracted around her mother. She has a fascination with knives; she sleeps with them and plays with them, and has cut herself with knives when she is angry. She cries when her mother hits her.

4

Plaintiff's mother stated that "[w]hen she get mad and she can't go outside when I put her on punishment, she always talk about, I wish I was dead. I wish I wasn't even here living here, I just wish I could die now." She fights with her siblings every day, pushing them down and throwing things at them. (R. 139-50).

Plaintiff testified that she hears voices when she gets "mad" and that they "tell me to [do] bad stuff, fighting and stuff like when I get mad, they keep bothering me just tell me like hit them, throw something at them, push them, all type of stuff." She has cut herself with a knife once. (R. 151). She gets herself ready for school and rides a bus to school. She doesn't mind studying but cannot focus on what she is doing because she gets confused. She likes football, basketball, kickball and music, and would like to be a doctor, lawyer or teacher. She does chores around the house, but her mother "sometimes" has to supervise her. Plaintiff testified that the other girl started the fight that led to plaintiff's probation. (R. 151-54).

Dr. Sydney Garner, a clinical psychologist, testified as a medical expert. Dr. Garner testified, based on her review of plaintiff's records and the testimony at the hearing, that plaintiff's condition did not meet or equal a listing, specifically including Listings 112.03, 112.05, 112.08, and 112.11.

The ALJ rendered a decision on November 15, 2006, in which he found that plaintiff was not under a disability as defined in the Social Security Act at any time through the date of the decision. On May 25, 2007, the Appeals Council denied plaintiff's request for review.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The

court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Factual findings that are supported by substantial evidence must be upheld by the court. See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)("Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence."). The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

"Federal regulations set forth the process by which the SSA determines if a child is disabled and thereby eligible for disability benefits." Shinn ex rel. Shinn v. Commissioner of Social Sec., 391 F.3d 1276, 1278 (11th Cir. 2004) (citing 42 U.S.C. § 1382c(a)(3)(C)(I) and 20 C.F.R. § 416.906). "The process begins with the ALJ determining whether the child

is 'doing substantial gainful activity,' in which case she is considered 'not disabled' and is ineligible for benefits."  Id. (citing 20 C.F.R. §§ 416.924(a), (b)).  In this case, the ALJ determined that plaintiff has not engaged in substantial gainful activity.  R. 14.

"The next step is for the ALJ to consider the child's 'physical or mental impairment(s)' to determine if she has 'an impairment or combination of impairments that is severe.'"  Id. (citing 42 U.S.C. §§ 416.924(a), (c)).  The ALJ found that plaintiff has the severe impairments of "conduct disorder; oppositional defiant disorder; and psychotic disorder, not otherwise specified."  R. 14.

"For an applicant with a severe impairment, the ALJ next assesses whether the impairment 'causes marked and severe functional limitations' for the child." Shinn, 391 F.3d at 1278 (citing 20 C.F.R. §§ 416.911(b), 416.924(d).)  This determination is made according to objective criteria set forth in the Code of Federal Regulations (C.F.R.).  As the Eleventh Circuit has explained,

> [t]he C.F.R. contains a Listing of Impairments ["the Listings", found at 20 C.F.R. § 404 app.] specifying almost every sort of medical problem ("impairment") from which a person can suffer, sorted into general categories. See id. § 416.925(a). For each impairment, the Listings discuss various limitations on a person's abilities that impairment may impose. Limitations appearing in these listings are considered "marked and severe." Id. ("The Listing of Impairments describes ... impairments for a child that cause[ ] marked and severe functional limitations.").
>     A child's impairment is recognized as causing "marked and severe functional limitations" if those limitations "meet[ ], medically equal[ ], or functionally equal[ ] the [L]istings." Id. § 416.911(b)(1); see also §§ 416.902, 416.924(a). A child's limitations "meet" the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment. A child's limitations "medically equal" the limitations in the Listings if the child's limitations "are at least of equal

medical significance to those of a listed impairment." Id. § 416.926(a)(2).

Id. at 1278-79. In this case, the ALJ determined that plaintiff did not have any impairment or combination of impairments that met or medically equaled a Listing. R. 14.

"Finally, even if the limitations resulting from a child's particular impairment are not comparable to those specified in the Listings, the ALJ can still conclude that those limitations are 'functionally equivalent' to those in the Listings. In making this determination, the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities. The C.F.R. specifies six major domains of life:

>   (i) Acquiring and using information;
>
>   (ii) Attending and completing tasks;
>
>   (iii) Interacting and relating with others;
>
>   (iv) Moving about and manipulating objects;
>
>   (v) Caring for [one]self; and
>
>   (vi) Health and physical well-being."

Shinn, 391 F.3d at 1279 (citing 20 C.F.R. § 416.926a(b)(1)). "The C.F.R. contains various 'benchmarks' that children should have achieved by certain ages in each of these life domains." Id. (citing 20 C.F.R. §§ 416.926a(g)-(l)). "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked' limitations in two of the domains [above], or an

'extreme' limitation in one domain." Id. (citing 20 C.F.R. § 416.926a(d) and § 416.925(a)).[4] The ALJ determined that C.S.M. has "a less than marked to a marked limitation" in the domain of interacting and relating with others, a "less than marked" limitation in the domain of attending and completing tasks, and no limitations in the remaining domains. (R. 17-22). Thus, the ALJ concluded that the plaintiff is not disabled.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ erred by: (1) failing to evaluate plaintiff's impairments in combination; (2) failing to provide a specific rationale for rejecting the testimony provided by plaintiff and her mother; and (3) granting significant weight to Dr. Garner's testimony. (Plaintiff's brief, p. 10).

*The Credibility Determination*

Plaintiff argues that the ALJ erred because he failed to articulate sufficient reasons for rejecting plaintiff's and her mother's testimony regarding plaintiff's subjective symptoms. In the Eleventh Circuit, a claimant's assertion of disability through testimony of pain or other subjective symptoms is evaluated pursuant to a three-part standard. The pain standard requires: "'(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that

---

[4] " A 'marked' limitation is defined as a limitation that 'interferes seriously with [the] ability to independently initiate, sustain, or complete activities,' and is 'more than moderate.'" Henry v. Barnhart, 156 Fed. Appx. 171, 174 (11th Cir. 2005)(unpublished)(citing 20 C.F.R § 416.926a(e)(2)(I)). "An 'extreme' limitation is reserved for the 'worst limitations' and is defined as a limitation that 'interferes very seriously with [the] ability to independently initiate, sustain, or complete activities,' but 'does not necessarily mean a total lack or loss of ability to function.'" Id. (citing 20 C.F.R. § 416.926a(e)(3)(I)).

the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The standard also applies to complaints of subjective conditions other than pain." Holt, *supra*, 921 F.2d at 1223. If this standard is met, the ALJ must consider the testimony regarding the claimant's subjective symptoms. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992). After considering the testimony, the ALJ may reject the claimant's subjective complaints. However, if the testimony is critical, the ALJ must articulate specific reasons for rejecting the testimony. Id. The reasons articulated by the ALJ must be "explicit, adequate, and supported by substantial evidence in the record." Preston v. Barnhart, 2006 WL 1785312, *1 (11th Cir. Jun. 29, 2006)(unpublished opinion)(citing Hale v. Bowen, 831 F.2d 1007, 1011-12 (11th Cir. 1987)). "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). "The credibility determination does not need to cite "'particular phrases or formulations'" but it cannot merely be a broad rejection which is '"not enough to enable [the court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole."'" Dyer, *supra*, 395 F.3d at 1210 (citations omitted).

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must

> be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. *The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.*

Social Security Ruling 96-7p, 61 Fed. Reg. 34483-01 (July 2, 1996)(emphasis added).

In his decision, the ALJ states that he considered "all symptoms in accordance with the requirements of 20 CFR 416.929 and SSR 96-7p." (R. 14). He summarizes the hearing testimony of plaintiff and her mother, then states, "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not entirely credible." (R. 15). The ALJ next summarizes the administrative and medical record and Dr. Garner's hearing testimony and applies that evidence to evaluate plaintiff's functioning in the six domains. (R. 15-22).

As plaintiff notes in her reply brief, the Commissioner does not argue that the ALJ was not required to articulate the reasons for his credibility determination. Rather, the Commissioner contends that: (1) the ALJ stated that he considered the symptoms in accordance with 20 C.F.R. § 416.929 and SSR 96-7p; (2) the ALJ found the testimony regarding plaintiff's symptoms to be not entirely credible after reviewing all of the evidence;

11

(3) he evaluated all of the evidence and plaintiff's functioning in the six domains; and (4) "[h]is entire opinion is an evaluation of the credibility of Plaintiff and her mother's complaints and complies with the requirements of 20 C.F.R. § 416.929 and Social Security Ruling 96-7p[.]" (Defendant's brief, pp. 10-11).

The Commissioner does not suggest that any particular language in the ALJ's decision should be construed as the rationale for the credibility determination, but points to the "entire opinion." The Commissioner's argument, in essence, is that an ALJ need not articulate specific and adequate reasons for rejecting testimony regarding a claimant's subjective symptomology, so long as the ALJ *states* that he is applying the proper standard and the ALJ evaluates all of the other evidence of record regarding the claimant's limitations. However, this is not the law. The court cannot discern from the ALJ's decision the extent to which he credited or discredited the testimony, his reasons for discrediting any portion of the testimony, or the specific evidence upon which he relied in assessing the testimony. Thus, the court is unable to determine whether the ALJ's reason for his credibility determination is adequate and supported by substantial evidence. For this reason, the Commissioner's decision will be reversed and this action will be remanded for further proceedings.[5]

## CONCLUSION

Upon review of the record as a whole and the decision of the Commissioner, the court

---

[5] In view of this conclusion, the court does not reach the remaining arguments advanced by the plaintiff. The court expects that the Commissioner will consider them on remand.

concludes that the Commissioner's decision is due to be reversed.[6]  A separate judgment will be entered.

DONE, this 24th day of September, 2008.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[6] The court does not intend to suggest that the ALJ's ultimate conclusion regarding disability is incorrect.  The court finds only that the ALJ's failure to articulate the basis for his credibility determination explicitly precludes judicial review of whether the Commissioner's disability determination is supported by substantial evidence.